(¶ 1} Derrik McGee appeals his convictions for theft and safecracking. First, McGee contends that instances of prosecutorial misconduct, in which the prosecutor allegedly vouched for the credibility of the state's witnesses and argued facts that were not supported by the evidence, deprived him of his right to a fair trial. Because the prosecutor's comments did not imply the knowledge of facts outside the record nor place his personal credibility at issue, they did not amount to improper vouching. Rather, they were a fair comment on what the evidence indicated. Thus, the prosecutor did not engage in prosecutorial misconduct.
 (¶ 2} Next, McGee contends that his convictions are not supported by the manifest weight of the evidence because the state's primary witness was not credible. However, the jury was in a much better position than us to determine the witness' credibility. Because substantial, credible evidence supports the jury's decision to convict McGee for theft and safecracking, the verdict is not against the manifest weight of the evidence.
 (¶ 3} Finally, McGee contends that his convictions must be reversed due to ineffective assistance of his trial counsel. Because trial counsel's performance was not deficient in failing to object to the prosecutor's comments concerning witness credibility, this claim is also without merit.
 (¶ 4} Having found no merit in any of the assigned errors, we affirm appellant's convictions.
 I. Facts (¶ 5} According to the state's evidence, McGee and several other people attended a party at Matt Nonnenmacher's grandparents' home on an evening while Nonnenmacher's grandparents were out of town on vacation. Several days after the party, Nonnenmacher discovered that his grandparents' safe containing jewelry, guns, coins, and documents were missing from the home and he reported the loss to law enforcement authorities.
 (¶ 6} A grand jury issued indictments against McGee and four codefendants arising out of the theft of the safe and its contents. McGee was indicted on charges of theft, in violation of R.C. 2913.02, safecracking, in violation of R.C. 2922.31, and tampering with evidence, in violation of R.C. 2921.12.
 (¶ 7} Prior to trial, the state dismissed charges against one of the codefendants, Kelly Miller, and another codefendant, Marc Crockett, entered a guilty plea to the charges against him. Both Ms. Miller and Crockett testified at trial against McGee and the other codefendants, Jonas Miller and Keely Jaeger.
 (¶ 8} According to Marc Crockett, Jonas Miller invited him to the Nonnenmacher party, told him about the safe, asked him to participate in stealing it, and showed him and McGee where the safe was located in the Nonnenmacher home. Crockett testified that he and McGee removed the safe from the Nonnenmacher's home, put it in the back seat of Kelly Miller's car, and Kelly Miller drove him, McGee, Jonas Miller, and Keely Jaeger to Ms. Miller's aunt's home in West Virginia. Crockett testified that he and McGee put the safe in the home's garage where he, McGee and Jonas Miller used a hammer, saws, and metal bars to force open the safe. Crockett testified that McGee and Jonas Miller removed jewelry, guns, and coins from the safe, and then he and Jonas Miller cashed in the coins at a Kroger store. Crockett stated that he, McGee, and Jonas Miller threw the empty safe over a bridge into a creek. The safe was subsequently recovered by law enforcement personnel and admitted into evidence.
 (¶ 9} The state presented a surveillance videotape from the Kroger store corroborating that Crockett and Jonas Miler were at the store with bags of coins. The state also presented testimony from Marcos Alvarez, Ms. Miller's young cousin, who sometimes stayed at the West Virginia home where the five defendants went after the Nonnenmacher party. Alvarez testified that one early morning in February 2005 he heard loud banging coming from his mother's garage and shortly thereafter observed McGee, Crockett, Jonas Miller and Jaeger standing around a safe in the garage of his mother's home; there were "bars" on the floor near the safe.
 (¶ 10} A jury found McGee guilty of theft and safecracking, and the trial court sentenced him to six-month prison terms for each offense, to be served concurrently.
 II. Assignments of Error (¶ 11} McGee appeals from the judgment entry of conviction, presenting the following assignments of error:
 1. Instances of prosecutorial misconduct, which occurred throughout Mr. McGee's criminal trial, deprived him of his right to a fair trial.
 2. Derrik McGee's convictions were against the manifest weight of the evidence.
 3. Derrik McGee was deprived of his right to the effective assistance of trial counsel.
 III. Prosecutorial Misconduct (¶ 12} In his first assignment of error, appellant contends the prosecutor engaged in misconduct depriving him of a fair trial by vouching for the credibility of Marc Crockett, the state's primary witness, and by arguing facts that were not in evidence.
 (¶ 13} The test for prosecutorial misconduct is whether the alleged remark was improper and, if so, whether it prejudicially affected the substantial rights of the defendant. State v. Smith (2000),87 Ohio St.3d 424, 442. "The touchstone `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78.
 (¶ 14} Appellant contends that the prosecutor's improper comments expressing his personal opinion on the veracity of the state's witnesses began in voir dire, when he told the jury that if Marc Crockett were his only witness, "then I'd be in a world of hurt in this case."
 (¶ 15} Because McGee failed to object at trial to the allegedly improper comment, he has waived all but plain error. See Crim R. 52(B);State v. Slagle (1992), 65 Ohio St.3d 597, 604; State v. Landrum (1990),53 Ohio St.3d 107, 111. We may invoke the plain error rule only if we find (1 ) that the prosecutor's comments denied appellant a fair trial, (2) that the circumstances in the instant case are exceptional, and (3) that reversal of the judgment below is necessary to prevent a miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus; State v. Bush (1994), 97 Ohio App.3d. 20, 27. The plain error doctrine permits correction of judicial proceedings only when error is clearly apparent on the face of the record and is prejudicial to the appellant.
 (¶ 16} The prosecutor's comment in voir dire was clearly not an expression of personal opinion vouching for Crockett's credibility. If anything, it called to the jurors' attention Crockett's weakness as a state's witness due to his extensive criminal record, his plea deal with the state, and his involvement in the crimes. While the statement might be construed to mean that the state's other witnesses were more credible than Crockett, it does not amount to improper vouching for witness credibility. It simply informed the jury that the state had other evidence to support its case. A prosecutor's statement on witness credibility is not an improper voucher where it neither implies knowledge of facts outside the record nor places the prosecutor's personal credibility at issue. State v. Keene (1998), 81 Ohio St.3d 646,666.
 (¶ 17} McGee next cites comments by the prosecutor during closing argument allegedly vouching for the credibility of the state's witnesses, e.g., that Marc Crocket was "being truthful" and that the state's witnesses were "consistent" in their versions of what happened. Again, McGee failed to object to these comments, waiving all but plain error. Slagle, supra.
 (¶ 18} The prosecutor is entitled to a certain degree of latitude in closing argument. Smith, supra at 442-443, citing State v.Liberatore (1982), 69 Ohio St.2d 583, 589. Closing arguments must be viewed in their entirety to determine whether the disputed remarks were unfairly prejudicial. State v. Moritz (1980), 63 Ohio St.2d 150, 157.
 (¶ 19} When viewed in context, the comments by the prosecutor did not personally vouch for Crockett's credibility. Instead, the prosecutor argued that "from all of the evidence, taken together, and all thewitnesses' testimony, the jury can conclude that Marc Crockett was being truthful". The prosecutor's other references to "being truthful" also expressly commented on what the evidence showed about Crockett's credibility ("And that shows that Marc Crockett is being truthful. It's evidence that Marc Crockett is being truthful . . ."). Because the prosecutor's comments regarding Crockett's credibility were based on what the evidence showed, the comments were not improper.
 (¶ 20} McGee further complains that the prosecutor improperly vouched for Crockett's credibility when the prosecutor made comments to the jury concerning the state's plea agreement with Marc Crockett. However, the Ohio Supreme Court has stated that "prosecutors can elicit or disclose information about plea agreements `to blunt or foreclose unfavorable cross-examination revealing that [witnesses] agreed to testify in exchange for favorable treatment by the prosecutor.'" State v.Skatzes (2004), 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 183, citingState v. Cornwell (1999), 86 Ohio St.3d 560. Accordingly, comments by the prosecutor regarding the plea bargain were not improper. Id.
 (¶ 21} Next, McGee claims that the prosecutor argued facts not in evidence in his closing argument. He argues the prosecutor misstated evidence that had been presented regarding statements Jonas Miller and Crockett made to the police. However, McGee does not specifically identify the prosecutor's alleged misstatements or explain how they were prejudicial to him and denied him a fair trial. It is not an appellate court's duty to discover and rationalize the basis for appellant's claim; the claims are thus deemed waived. See App.R. 16(A)(3).
 (¶ 22} In sum, none of the instances cited by McGee, either individually or collectively, amounts to prosecutorial misconduct. McGee received a fair trial, and his rights were not prejudiced by the remarks of the prosecutor. Because the prosecutor's remarks were not improper, they did not amount to error, let alone plain error. Accordingly, we overrule the first assignment of error.
 IV. Manifest Weight of the Evidence (¶ 23} In his second assignment of error, McGee contends that his convictions are against the manifest weight of the evidence.
 (¶ 24} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175. We may order a new trial only in the exceptional case in which the evidence weighs heavily against the conviction. State v.Bethel, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 100, citingMartin, at 175. We will not reverse a conviction so long as the State presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy,84 Ohio St.3d 180, 193-194, 1998-Ohio-533; State v. Eley (1978), 56 Ohio St.2d 169, syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89.
 (¶ 25} McGee asserts that his convictions are against the manifest weight of the evidence because Marc Crockett, the state's primary witness implicating him in the instant offenses, was not credible. McGee argues that Crockett's testimony was not worthy of belief because he admitted that he had an extensive prior criminal record, including convictions for burglary, theft, possession of a stolen vehicle, safecracking, possession of criminal tools, and multiple convictions for breaking and entering. McGee contends Crockett also lacked credibility because his testimony was presented as the result of a plea bargain in which Crockett agreed to testify against appellant and the other codefendants in exchange for greatly reduced sentences in this and an unrelated theft case.
 (¶ 26} In instructing the jury on credibility, the trial court cautioned them that "the admitted or claimed complicity of a witness may affect his credibility and may make his testimony subject to grave suspicion and require that it be weighed with great caution." The court further cautioned the jury that "[a]n accomplice may have special motives in testifying, and you should carefully examine an accomplice's testimony and use it with great caution and view it with grave suspicion."
 (¶ 27} The weight to be given evidence, and the credibility to be afforded Crockett's testimony, are issues to be determined by the trier of fact. State v. Dye (1998), 82 Ohio St.3d 323, 329; State v.Frazier (1995), 73 Ohio St.3d 323, 339. The jury "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 (¶ 28} After being advised of Crockett's prior criminal record, his admissions as to culpability in the instant offenses, and the plea bargain he struck in this case, and after receiving the court's cautionary instruction on witness credibility, the jury obviously believed Crockett's testimony implicating McGee. We will not second guess the jury on the matter of Crockett's credibility, especially where Crockett's testimony was corroborated by other witnesses and evidence. Marcos Alvarez testified that McGee was standing around the safe in the garage of his mother's West Virginia home. Evidence indicated that the safe was recovered from a creek in West Virginia where Crockett testified that he and McGee disposed of the safe.
 (¶ 29} This is not a case in which the evidence weighs heavily against McGee's convictions; the jury verdict was not a manifest miscarriage of justice. Martin, supra. Accordingly, we overrule the second assignment of error.
 V. Ineffective Assistance of Trial Counsel (¶ 30} In his final assignment of error, appellant claims that he received the ineffective assistance of his trial counsel.
 (¶ 31} The Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean that a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to prevail on a claim of ineffective assistance of counsel, McGee must show (1) deficient performance, i.e., performance falling below an objective standard of reasonable representation, and (2) resulting prejudice, i.e., a reasonable probability that but for counsel's error, the proceeding's result would have been different. SeeStrickland, supra 466 U.S. at 687-688, 80 L.Ed.2d at 693; State v.Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus. Failure to establish either element is fatal to the claim.Strickland, 466 U.S. at 687, 80 L.Ed.2d at 693.
 (¶ 32} When considering whether trial counsel's representation amounts to a deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v. Hasting (1983), 461 U.S. 499,508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96.
 {¶ 33} McGee contends his trial counsel's performance was deficient because his counsel failed to object to the prosecutor's improper comments, as argued in the first assignment of error, and counsel's deficient performance prejudiced him because the evidence of guilt was not overwhelming.
 (¶ 34} Because we have concluded in the first assignment of error that the prosecutor's comments were not improper or prejudicial, trial counsel was not deficient in failing to object to them. Accordingly, McGee was not denied the effective assistance of trial counsel, and this assignment of error is overruled.
 (¶ 35} Having overruled each of McGee's assignments of error, we affirm the trial court's judgment entry of conviction in this case.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and McFarland, J.: Concur in Judgment and Opinion.