DECISION AND JUDGMENT ENTRY
{¶ 1} John A. Givens appeals his trafficking in drugs (hydrocodone) conviction and sentence in the Washington County Common Pleas Court. On appeal, Givens contends that the trial court erred when it admitted a surveillance recording into evidence because the State did not obtain the proper consent from the confidential informant ("CI") as required by R.C. 2933.52(B)(3). Because Givens did not raise this issue with the trial court [he objected under R.C. 2933.52(B)(1) instead of R.C.2933.52(B)(3)], he has forfeited all but plain error. Because we find that the CI did implicitly consent to the surveillance recording, *Page 2 
we find that the trial court did not commit any error, let alone plain error. Givens next contends that the prosecutor improperly vouched for the CI's credibility in closing arguments. Because the prosecutor supported his statements by referencing the evidence in the record, we disagree. Givens next contends that his conviction for drug trafficking is against the manifest weight of the evidence. Because substantial evidence supports his conviction, we disagree. Givens next contends that his sentence violates the Due Process and Ex Post Facto Clauses of the United States Constitution. Because of our holding in State v.Grimes, Washington App. No. 04CA17, 2006-Ohio-6360, we disagree. Finally, Givens contends that his trial counsel was ineffective for failing to object to (1) the prosecutor's misconduct in closing arguments and (2) his illegal sentence. Because we do not find error in the prosecutor's conduct or Givens' sentence, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} A Washington County Grand Jury indicted Givens for drug trafficking in violation of R.C. 2925.03(A)(1) and (C)(2)(a), a felony of the fifth degree. He entered a not guilty plea, and the case proceeded to a jury trial. Before trial, Givens filed a motion in limine requesting the court to not allow an audio surveillance recording into evidence because the State did not comply with R.C. 2933.52(B)(1). The court denied his motion after voir dire on the day of trial and found that R.C.2933.52(B)(1) did not apply in this case.
 A. State's Version of the Facts at Trial *Page 3 {¶ 3} In 2005, the Washington County Sheriffs Office had a felony case against the female CI for selling Vicodin pills. In exchange for not prosecuting her, the Sheriffs Office and the Prosecutor's Office reached an agreement with her that she would make controlled buys of drugs. They agreed that the CI would make a total of six controlled buys from three individuals (two buys per person). They further agreed that, before each buy, the officers would: (1) search both her and her vehicle for drugs; (2) supply her with drug money; and (3) provide her with hidden recording devices so that they could listen to her communications.
 {¶ 4} On December 1, 2005, the CI called Jon Jenkins, a detective for the Sheriffs Office, who was assigned to the Major Crimes Task Force. The CI told the detective that she thought that she could again purchase Vicodin pills from Eric Morris. She knew Morris, because she used to date him in high school. Also, about a month earlier, working with the Sheriffs Office, she had purchased drugs from Morris.
 {¶ 5} The CI called the detective again at 3 p.m. and said that Morris told her to be at John Givens' house by 4 p.m. so that she could purchase drugs. The detective contacted other officers, including officers from the Marietta Police Department, and decided that enough officers could run surveillance by the agreed time. After searching the CI and her vehicle, the officers gave the CI $100 to buy the drugs. They further provided her with a recording device so that they could listen for evidence in the case and also provide the CI with protection *Page 4 
if necessary. As it turned out, most of the 30-minute recording was very poor in quality.
 {¶ 6} The CI drove to Givens' home. The officers, who were not in uniform, provided surveillance of the area around the home in unmarked cars. They saw her go to the home and get out of her vehicle. She talked to Morris first, who was outside the home. After a short discussion, the CI and Morris went inside Givens' home. The officers could no longer see her. Once inside, the CI testified that Givens had to go elsewhere to get the drugs and wanted to use her car. The car belonged to her mother, and she would not let Givens use her car. So, Givens and the CI agreed to go while Morris remained behind. Givens' voice on the recording did tell Eric to stay. Officers saw Givens and the CI leave the home. The CI drove Givens to another location about two blocks away. The officers observed Givens go to the back of a house and enter while the CI remained in the car. About ten minutes later, Givens returned to the car. Givens' voice on the recording told the CI, "I got enough for you, Eric, and me."
 {¶ 7} The officers saw the CI drive Givens back to his home. They exited the car and went inside Givens' home where the officers could no longer see them. The CI testified that she gave Givens $30 in exchange for 15 Vicodin pills. The officers, just before the CI exited the home, did hear on the recording another female in the home say, "John, do you want anything to eat?"
 {¶ 8} Officers saw the CI exit the home a short time after she entered. The CI met the officers at a pre-determined location. She gave the officers the 15 *Page 5 
pills and $70. The officers had the pills tested. The test showed that the pills were Vicodin, which contain hydrocodone, a Schedule III controlled substance.
 B. Givens' Version of Facts at Trial {¶ 9} Givens did not testify or call any witnesses. Through cross-examination of the State's witnesses, he sought to convince the jury that he was not guilty of the offense because the key witness cut a deal with the State and her testimony could not be trusted. He established that the CI, without the deal, would have had a felony drug conviction on her record and lost her job. In addition, the court would have imposed a jail or prison term. He further pointed out that the officers did not see the CI inside the home with Givens when the alleged drug deal exchange actually occurred, and that such part of the recording could not be heard because of its poor quality. The CI and the officers admitted that they thought the CI would buy drugs from Morris, not Givens. Further, the CI admitted that she later lied to Givens' sister by denying that she was the person that bought the drugs from Givens.
 C. Closing Arguments {¶ 10} The prosecutor, at various points in the closing arguments, made the following three statements about the CI's credibility:
 (1). Perhaps it would have been very easy for [the CI] to come in here and try to say it was Eric Morris that had the deal; after all, that was the target, that's who she thought it was. She had made another drug buy from him, was going to make another buy from him later and subsequently did. But she was telling the truth.
 (2). And when was it she lied? She lied in that telephone conversation that she had with the defendant's sister, when she was a party, several weeks ago, with friends of her[s]. *Page 6 
Well, of course, [the CI] wanted to hide that fact and did not want that to come out. So she did tell a lie at that day on that time.
 (3). "That leaves only one thing, that [the CI] is telling you the absolute truth about what happened on December 1st.
 D. Jury Verdict, Court Findings, Sentencing, Appeal {¶ 11} The jury returned a verdict of guilty of trafficking in drugs (hydrocodone). The court accepted the guilty verdict and ordered a pre-sentence investigation. At sentencing, the court imposed a non-minimum sentence of eleven months in prison and made the sentence consecutive to another sentence Givens was already serving.
 {¶ 12} Givens appeals his conviction and sentence and asserts the following five assignments of error: I. "The trial court erred in admitting into evidence an audio surveillance tape that recorded a conversation which was intercepted without prior consent, as required by R.C. 2933.52." II. "John Givens' right to a fair trial was violated when, in closing arguments, the prosecutor vouched multiple times for the veracity of the State's key witness." III. "The trial court violated John Givens' right to due process and a fair trial when it entered a judgment of conviction for felony drug trafficking, which was against the manifest weight of the evidence." IV. "The trial court committed plain error when it retroactively applied the remedial holding from the Ohio Supreme Court decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, to John Givens, whose crime of conviction predates theFoster decision." And, V. "Trial counsel was ineffective, in violation of the Sixth Amendment to the United States Constitution *Page 7 
and Section 10, Article I of the Ohio Constitution, for failing to object to reversible errors at trial and sentencing."
 II. {¶ 13} Givens contends in his first assignment of error that the trial court erred when it admitted into evidence an audio surveillance tape that recorded a conversation he had with the CI. He claims that the CI did not give consent as required by R.C. 2933.52(B)(3).
 {¶ 14} Givens did not raise this issue in the trial court. Thus, he has forfeited all but plain error.
 {¶ 15} Pursuant to Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights, although they were not brought to the attention of the court. The Supreme Court of Ohio has found that "[b]y its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." State v. Barnes (2002), 94 Ohio St.3d 21, 27,2002-Ohio-68. See State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642. First, an error must exist. Id., citing State v. Hill (2001),92 Ohio St.3d 191, 200, citing United States v. Olano (1993), 507 U.S. 725, 732
(interpreting Crim.R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b]). Second, the error must be plain, obvious, or clear. Id. (Citations omitted.) Third, the error must affect "substantial rights," which the court has interpreted to mean that "the trial court's error must have affected the outcome." Id. citing Hill at 205; State v. Moreland (1990), 50 Ohio St.3d 58, 62; State v. Long
(1978), 53 Ohio St.2d 91, paragraph two of the syllabus. *Page 8 
 {¶ 16} "The burden of demonstrating plain error is on the party asserting it. (Cite omitted.) A reversal is warranted if the party can prove that the outcome `would have been different absent the error.'" (Cite omitted.) Payne at ¶ 17. A reviewing court should use its discretion under Crim.R. 52(B) to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, supra, at paragraph three of the syllabus.
 {¶ 17} R.C. 2933.52(A) prohibits persons from doing any of the following:
 (1) Intercept, attempt to intercept, or procure another person to intercept or attempt to intercept a wire, oral, or electronic communication;
 (2) Use, attempt to use, or procure another person to use or attempt to use an interception device to intercept a wire, oral, or electronic communication, if either of the following applies:
 (a) The interception device is affixed to, or otherwise transmits a signal through, a wire, cable, satellite, microwave, or other similar method of connection used in wire communications;
 (b) The interception device transmits communications by radio, or interferes with the transmission of communications by radio.
 (3) Use, or attempt to use, the contents of a wire, oral, or electronic communication, knowing or having reason to know that the contents were obtained through the interception of a wire, oral, or electronic communication in violation of sections 2933.51 to 2933.66 of the Revised Code.
 {¶ 18} However, R.C. 2933.52(B)(3) provides, "This section does not apply to * * * [a] law enforcement officer who intercepts a wire, oral, or electronic communication, if the officer is a party to the communication or if one of the parties to the communication has given prior consent to the interception by the officer[.]"
 {¶ 19} Here, the facts are undisputed. Officers had the consent of the CI to record her communications. However, everyone thought that the CI would be *Page 9 
communicating with Eric Morris. The CI did talk to Morris, but Givens became part of the communication as well. As such, the issue is whether the CI's consent to intercept her communication with Morris implicitly included others who might inject themselves into the communication.
 {¶ 20} "Implied consent" means, "Consent inferred from one's conduct rather than from one's direct expression." Black's Law Dictionary (8th Ed.2004) 323.
 {¶ 21} Here, the CI told officers that Morris could get her some Vicodin. The officers wired the CI and gave her $100 to purchase drugs. She went to Givens' home to meet Morris. After a short conversation, Morris took her into Givens' trailer. Morris stayed at the trailer while the CI drove Givens, under his direction, to another nearby location. The CI stayed in the car while Givens went into the back of a residence. Givens returned to the car and told the CI that he had enough drugs for her, Morris, and him. The CI drove Givens back to his trailer. Once inside with Morris, the CI gave Givens $30 for 15 Vicodin pills. The CI left shortly thereafter and met up with the officers.
 {¶ 22} We find that the CI gave her implied consent to record the communication with Givens. Morris, not Givens, arranged for the CI to buy the drugs. However, Givens was Morris' source for the drugs. Givens simply eliminated an unnecessary step when he sold the 15 pills directly to the CI. Givens eliminated selling the drugs to Morris so that Morris could then sell them to the CI. In addition, the CI, knowing that the officers wired her, voluntarily left Morris and went with Givens. From this conduct, we can infer or imply that she gave her consent to record the communications she had with Givens. *Page 10 
 {¶ 23} Givens' further contends that officers received the CI's written consent in March of 2006, well after December 1, 2005. However, although it was not introduced into evidence, Detective Jenkins testified that he received a signed electronic intercept consent form from the CI prior to the December 1 communication.
 {¶ 24} Therefore, for the above stated reasons, we find that the trial court did not commit any error, let alone plain error, when it admitted the surveillance tape into evidence.
 {¶ 25} Accordingly, we overrule Givens' first assignment of error.
 III. {¶ 26} Givens contends in his second assignment of error that he did not receive a fair trial because the prosecutor in closing arguments vouched, multiple times, for the credibility of the CI.
 {¶ 27} Once again, Givens has forfeited all but plain error because he did not object in the trial court to the prosecutor's comments.
 {¶ 28} The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced. State v. Smith, 97 Ohio St.3d 367, 2002-Ohio-6659
at ¶ 45, citing State v. Smith (1984), 14 Ohio St.3d 13, 14. The "conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial."State v. Gest (1995), 108 Ohio App.3d 248, 257, citing State v.Keenan (1993), 66 Ohio St.3d 402; State v. Apanovitch (1987),33 Ohio St.3d 19, 24. The Supreme Court of Ohio has recognized that the prosecution is afforded wide *Page 11 
latitude in closing arguments. Smith, 97 Ohio St.3d 367, at ¶ 51. The "touchstone of analysis * * * `is the fairness of the trial, not the culpability of the prosecutor.' * * * The Constitution does not guarantee an `error free, perfect trial.'" Gest at 257.
 {¶ 29} Here, Givens points to three different parts of the closing argument where the prosecutor vouched for the credibility of the CI:
 (1). Perhaps it would have been very easy for [the CI] to come in here and try to say it was Eric Morris that had the deal; after all, that was the target, that's who she thought it was. She had made another drug buy from him, was going to make another buy from him later and subsequently did. But she was telling the truth. (Hereinafter "statement one").
 (2). And when was it she lied? She lied in that telephone conversation that she had with the defendant's sister, when she was a party, several weeks ago, with friends of her[s].
 Well, of course, [the CI] wanted to hide that fact and did not want that to come out. So she did tell a lie at that day on that time. (Hereinafter "statement two").
 (3). "That leaves only one thing, that [the CI] is telling you the absolute truth about what happened on December 1st. (Hereinafter "statement three").
 {¶ 30} Givens claims that we "addressed this specific issue in Statev. McGee, Washington App. No. 05CA60, 2007-Ohio-426." He asserts, "InMcGee, this Court held that because the prosecutor's statement was preceded by the phrase, `from all of the evidence, taken together, and all the witnesses' testimony, the jury can conclude that [the witness] was being truthful,' the statement was not improper." Givens maintains that because the prosecutor in this case did not flank his words with a statement like in McGee, the prosecutor's comments prejudiced him. We are not persuaded. *Page 12 
 {¶ 31} As we stated in McGee, "A prosecutor's statement on witness credibility is not an improper voucher where it neither implies knowledge of facts outside the record nor places the prosecutor's personal credibility at issue." Id. at ¶ 16, citing State v. Keene
(1998), 81 Ohio St.3d 646, 666.
 {¶ 32} Here, we find that the prosecutor supported the credibility statements by referencing evidence in the record, not outside the record. In "statement one" the prosecutor based the CI's credibility on facts in the record. He basically said that if she was going to lie, then she would have said she bought the pills from Morris because the deal she had with the police was to buy from Morris. In "statement two" the prosecutor explained to the jury, based on facts in the record, why the CI lied to Givens' sister. She lied because she did not want the story to come out at that time in front of her friends. The prosecutor makes "statement three" after he goes through the audio recording and points out to the jury some of the statements Givens made in the recording. For example, statements like "Eric, stay here" (before the police saw him leave with the CI in the car without Eric) and "I got some for you, I got some for Eric, and I got some for me" (after Givens had gone into a residence and returned to the CI waiting in the car).
 {¶ 33} In addition, Givens, through his counsel, told the jury that it had to evaluate and decide the CI's credibility. Specifically, he said, "And you've heard [the CI]. And you have to decide, is she telling the truth, based upon all the other facts and — and evidence that — that went on[.]" Further, the trial court instructed the jury that it was the sole judge of the credibility of a witness. *Page 13 
 {¶ 34} Therefore, we find that the prosecutor properly referenced the record to support the three credibility statements. Consequently, we do not find any error, let alone plain error.
 {¶ 35} Accordingly, we overrule Givens second assignment of error.
 IV. {¶ 36} Givens contends in his third assignment of error that his conviction is against the manifest weight of the evidence.
 {¶ 37} An appellate court, when determining whether a criminal conviction is against the manifest weight of the evidence, "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v.Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. See, also, State v. Smith, Pickaway App. No. 06CA7, 2007-Ohio-502, ¶ 41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted."Smith at ¶ 41, citing State v. Garrow (1995), 103 Ohio App.3d 368,370-71; State v. Martin (1983), 20 Ohio App.3d 172, 175. However, "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. *Page 14 
 {¶ 38} Givens contends that of the four state witnesses who testified against him, only the CI had personal knowledge of what occurred inside his home. He maintains that the CI's "testimony was skewed and self-serving" because of her escape from her own felony drug charges by reaching an agreement with law enforcement to make six controlled drug buys from three individuals.
 {¶ 39} We agree that the jury had to find the CI credible in regards to what happened inside Givens' home. However, the officers verified much of the CI's testimony at trial. The officers knew Givens' voice and heard him on the audio recording. Givens told Eric to stay in the home, and the officers saw Givens leave with the CI while Eric remained in the home. Officers saw the CI drive Givens to a near-by residence. They saw Givens exit the car and go into a residence. Givens returned, and they heard him say that he got enough for her, Morris, and him. They saw the CI drive Givens back to his home and enter it.
 {¶ 40} Even though the audio recording did not provide good evidence of what transpired during the sale, the CI's version seems credible. It makes sense that Givens would not waste a step and sell the drugs to Morris first so that Morris in turn could sell them to the CI. The CI did not spend a lot of time in the home before she exited and met the officers at a pre-determined location with the 15 pills she bought and the $70 in cash that she did not spend.
 {¶ 41} The jury simply chose to believe the State's version. That is its province. We cannot find that in resolving conflicts in the evidence, the jury, as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. We find *Page 15 
substantial evidence upon which the trier of fact could reasonably conclude that all the elements of the offense of drug trafficking were proven beyond a reasonable doubt. Therefore, we find that Givens' drug trafficking conviction is not against the manifest weight of the evidence.
 {¶ 42} Accordingly, we overrule Givens' third assignment of error.
 V. {¶ 43} Givens contends in his fourth assignment of error that the trial court erred when it sentenced him to a non-minimum, consecutive prison term. He claims that the court violated the Due Process and Ex Post Facto Clauses of our State and Federal Constitutions. The crux of Givens' argument is that the trial court should have interpreted the sentencing statutes to create a presumption in favor of a minimum, concurrent sentence for offenders in his situation, and that State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, which followed Blakely v.Washington (2004), 542 U.S. 296, retroactively increased the presumptive sentences.
 {¶ 44} We have already decided this issue in Grimes, supra, but apparently Givens invites us to revisit our decision. InGrimes, we held that the Foster decision did not change the range of sentences.
 {¶ 45} Givens did not raise his due process and ex post facto arguments in the trial court. Givens received his sentence afterBlakely, supra, which was decided on June 24, 2004. Thus, he has forfeited all but plain error. State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642, ¶ 31 ("we hold that a lack of an objection in the trial court forfeits the Blakely issue for purposes of appeal when *Page 16 
the sentencing occurred after the announcement of Blakely."). Earlier, we outlined our plain error standard of review under Crim.R. 52(B).
 {¶ 46} The Foster Court considered the constitutionality of Ohio's sentencing statutes in light of the United States Supreme Court's holdings in Blakely and Apprendi v. New Jersey (2000), 530 U.S. 466. The Court found that, under Blakely and Apprendi, R.C. 2929.14(B), R.C.2929.14(E)(4) and R.C. 2929.19(B)(2), as well as other sections of the Ohio Revised Code, violated the Sixth Amendment to the extent that they required judicial fact finding. Foster at paragraphs one through seven of the syllabus. In constructing a remedy, the Foster Court excised the provisions it found to offend the Constitution, granting trial court judges full discretion to impose sentences within the ranges prescribed by statute. Id. The Court then held that the cases before the Court "and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent" with the Court's opinion. Id. at ¶ 104. Consistent with the United States Supreme Court's holding inUnited States v. Booker (2005), 543 U.S. 220, the Foster Court only applied its holding retroactively to cases that were then pending on direct review or not yet final. Foster at ¶ 106.
 {¶ 47} This court has considered and rejected a due process and ex post facto challenge to a sentence imposed in accordance with the Supreme Court of Ohio's holding in Foster. See State v. Grimes, Washington App. No. 04CA17, 2006-Ohio-6360. There, we agreed with the observations of the Ninth and Second Districts, which rejected such challenges outright. Id. at ¶ 8. In doing so, those courts expressed that it is unlikely that the Supreme Court of Ohio would *Page 17 
have directed lower level courts to violate the Constitution; and, in any event, the Supreme Court of Ohio directives bind the district courts of appeal. Id. at ¶ 8, citing State v. Hildreth, Lorain App. No. 06CA8879, 2006-Ohio-5058, at ¶ 10; State v. Durbin, Greene App. No. 2005-CA-134, 2006-Ohio-5125, at ¶¶ 41-42.
 {¶ 48} In finding that the Supreme Court of Ohio's remedy inFoster does not violate the Due Process or Ex Post Facto Clauses of the United States Constitution, we also expressed our approval of the reasoning set forth by the Third District in State v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162. Grimes at ¶ 9, citing with approvalMcGhee at ¶¶ 11 13-20. Because the range of prison terms for the defendant's offense remained the same both before and afterFoster, we concluded, "it is difficult to understand how appellant could maintain that an enlargement of the criminal statute occurred, generally, or available punishments, in particular." Id. at ¶ 10. Further, we noted that the appellant did not attempt to explain how he would have acted differently had he known that the Supreme Court of Ohio would strike down parts of R.C. 2929.14. Id. Accordingly, we found that the court did not err in imposing the maximum sentence for the offense. Id. at ¶ 11.
 {¶ 49} Based upon our holding in Grimes (and numerous decisions following Grimes), we find that the trial court did not err in imposing the non-minimum, consecutive sentence for Givens' offense. We do not accept Givens' implied invitation to revisit these issues. Therefore, we do not find any error, let alone plain error.
 {¶ 50} Accordingly, we overrule Givens' fourth assignment of error. *Page 18 
 VI. {¶ 51} Givens contends in his fifth assignment of error that his trial counsel was ineffective for failing to object to the prosecutor's comments as outlined in his second assignment of error. He further maintains that his trial counsel should have objected to his illegal sentence as outlined in his fourth assignment of error.
 {¶ 52} "In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness." State v. Wright, Washington App. No. 00CA39, 2001-Ohio-2473, citing State v. Hamblin (1988), 37 Ohio St.3d 153, cert. den. (1988), 488 U.S. 975; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. The United States Supreme Court holds that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." Strickland v. Washington (1984), 466 U.S. 668, 684.
 {¶ 53} "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id. at 685. As this court has stated, "effective counsel is one who `plays the role necessary to ensure that the trial is fair.'" Wright, citing Strickland at 685. Therefore, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., citing Strickland at 685-86.
 {¶ 54} In showing that an attorney's assistance was ineffective, Givens must show two things: (1) "that counsel's performance was deficient * * * "which *Page 19 
"requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment [;]" and (2) "that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland at 687. If a defendant fails to make both showings, "it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id. Further, "[counsel's performance is deficient if it falls below an objective standard of reasonable representation."Wright, citing State v. Murphy (2001), 91 Ohio St.3d 516; State v.Bradley (1989), 42 Ohio St.3d 136.
 {¶ 55} This court, "when addressing an ineffective assistance of counsel claim, should not consider what, in hindsight, may have been a more appropriate course of action." Id., citing State v. Phillips
(1995), 74 Ohio St.3d 72. Instead, this court "must be highly deferential." Id., citing Strickland at 689. Further, "a reviewing court: `must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id., citing Strickland at 689.
 {¶ 56} Here, Givens' has not shown that his counsel's performance was deficient as required by the first prong of the Strickland test. We addressed Givens' second and fourth assignments of error and did not find any error. Therefore, we find that Givens' trial counsel was not ineffective as alleged. *Page 20 
 {¶ 57} Accordingly, we overrule Givens' fifth assignment of error. Having overruled all of Givens' assignments of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that this JUDGMENT BE AFFIRMED and that Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty-day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion. *Page 1