[Cite as *State v. Keeley*, 2012-Ohio-3564.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 11CA5 |
| vs. | : | |
| DAVID P. KEELEY, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

COUNSEL FOR APPELLANT:      John A. Bay, Bay Law Office L.L.C., P.O. Box 29682, Columbus, Ohio 43229[1]

COUNSEL FOR APPELLEE:      James E. Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, 205 Putnam Street, Marietta, Ohio 45750

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 8-2-2012

ABELE, P.J.

{¶ 1}   This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence.   A jury found David P. Keeley, defendant below and appellant herein, guilty of (1) two counts of rape in violation of R.C. 2902.02(A)(1)(c)&(B); and (2) three counts of Gross Sexual Imposition (GSI) in violation of R.C. 2907.05(A)(5)&(B).

_____
   [1] Different counsel represented appellant during the trial court proceedings.

{¶ 2}  Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED DAVID P. KEELEY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR THEFT [sic] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN ADMITTING LAY WITNESS OPINION TESTIMONY THAT WAS UNRELATED TO THAT WITNESS'S PERCEPTIONS AND CALLED FOR SPECIALIZED KNOWLEDGE."

THIRD ASSIGNMENT OF ERROR:

"THE STATE'S MISCONDUCT, DURING ITS CLOSING ARGUMENT, DENIED MR. KEELEY THE RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

FOURTH ASSIGNMENT OF ERROR:

"TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE STATE'S IMPROPER STATEMENTS DURING ITS CLOSING ARGUMENT."

{¶ 3}  Appellant and his family moved from England to the United States when his employer transferred him to a position.[2]  He, his wife and daughters eventually settled in Marietta in 1996.  They became close friends with the Davis family, whose backyard adjoins their own.  R.D., the youngest child of the Davis family, was approximately ten or eleven years

---

[2]  Appellant testified that his wife and children have become U.S. citizens.    It appears from the sentencing hearing transcript, however, and the discussion of possible deportation once appellant is released from prison, that he has not been

old when appellant moved to the area.   Although an adult at the time of the events that resulted in the offenses, R.D. suffers from mental retardation and functions at the cognitive level of a minor.[3]

**{¶ 4}**   Around mid-April 2010, R.D. visited appellant's home to help paint.   Afterward, appellant and R.D. engaged in some degree of sexual contact.   Several weeks later, appellant contacted R.D. to see if she would help him work on his motorcycles.[4]   R.D. went to appellant's home and, once again when the work was completed, the two engaged in sexual contact.[5]

**{¶ 5}**   After R.D. returned home that particular evening, she was unusually quiet.   When R.D.'s mother asked if anything was wrong, she admitted that she and appellant had engaged in sexual activity.   Jane Davis, R.D.'s mother, and her husband took her to the hospital and medical personnel used a "rape kit" to collect genetic material on, and inside, her body.

**{¶ 6}**   The following morning, authorities prompted Davis to engage in a "controlled" cell-phone call with appellant.   Appellant initially denied any sexual contact with R.D., but after further questioning, admitted to Davis that he had "tried to have sex with [R.D.] but couldn't actually do the job" because of certain medical problems he was experiencing.   Appellant also

---

naturalized.

[3] The precise age level at which R.D. functions was an issue at trial.    Prosecution witnesses testified that her age level is less than ten years old, whereas defense witnesses testified that she behaved like someone sixteen to eighteen years of age.

[4] Appellant races motorcycles in addition to his regular job.    The uncontroverted evidence is that appellant often offered R.D. spending money to come to his house to help with chores.

[5] No allegation was made, nor evidence introduced, to indicate that the encounters involved the use of force.

intimated to Davis that her daughter had a "crush" on him and that she initiated the sexual

contact.   Appellant also stated to Davis that he "touched her [daughter] once before" when R.D.

came over to help him paint.   Appellant promised Davis that he would contact her again to

discuss the matter after he returned home.[6]

{¶ 7}   After appellant returned home, and before he could contact Davis, several

Washington County Sheriff's Deputies interviewed him.   Again, appellant admitted that he

engaged in sexual activity with R.D., although he suggested that R.D. initiated the   sexual

conduct.   At the conclusion of the interview the authorities arrested appellant.

{¶ 8}   Subsequently, the Washington County Grand Jury returned an indictment that

charged appellant with two counts of rape and three counts of GSI.   Appellant pled not guilty

and the matter proceeded to a jury trial.

{¶ 9}   At trial, no question existed that sexual contact had, in fact, occurred.   Appellant

acknowledged that some degree of contact had occurred.   R.D. also described some of the acts,

and she admitted that she did not tell appellant to stop.   The trial focused primarily on two

issues.   The first was whether vaginal penetration occurred.   R.D. answered "yes" when asked if

appellant had "put his fingers in [her] front bottom[.]" Likewise, she responded affirmatively

when asked if appellant put "his penis inside [her] front bottom[.]"   Washington County

Sheriff's Department Detective Mark Johnson also produced a tape recording of his interview

with appellant.   In that recording, appellant did not admit that he digitally penetrated R.D., but

---

[6] This cell phone call occurred the morning after Davis had spent all night at the hospital with her daughter. Appellant was apparently enroute to a motorcycle race.

he conceded that it may have occurred.   Appellant, however, emphatically denied penile penetration and testified that because he suffered from erectile dysfunction, he was incapable of doing so.   To confirm his claim, the defense offered corroborating testimony from appellant's physician.

{¶ 10} Lauren Dutton, a Marietta Memorial Hospital nurse, testified that she examined R.D. the night of the second incident and found a "white milky fluid" in the area of her cervix. Sarah Glass, a forensic scientist at the Ohio Bureau of Criminal Investigation (BCI), testified that the swabs from the rape kit tested positive for semen.   Emily Draper, also a BCI scientist, testified that after she tested the genetic material from R.D.'s swabs and compared it to the genetic material on "buccal swabs" taken from appellant's mouth, appellant could not be "excluded as the source of the semen on the vaginal swabs."[7]

{¶ 11} The second major issue at trial was R.D.'s mental and emotional age, and whether a "substantial impairment" existed to   consenting to sexual activity.   Although various prosecution witnesses offered different opinions, all agreed that R.D. behaved at a level below that of a 10 year old child.   Appellant countered, however, that R.D. behaved that way only when she was near her mother.   Away from her mother, appellant maintained, R.D. acted like a 16 to 18 year old.   Harriet Metcalfe, a friend of the Keeley family, testified that she had previously met R.D. and thought that she acted like a 16 year-old.

{¶ 12} After hearing the evidence, the jury returned guilty verdicts on all charges.   The

---

[7] The witness explained that it is not the policy of BCI to make "identity statements."     That is to say, the witness would not opine that the genetic material taken from the vaginal swab matched the genetic material taken from appellant. She did assure the jury, however, that she "would have to test approximately 3.6 quadrillion other people, to find somebody else who might be the source of the semen."

trial court sentenced appellant to serve six years imprisonment on each of the rape counts and twelve months on two of the GSI counts. The court found that the other GSI count merged into the rape charges, ordered that the sentences for rape and one GSI count be served concurrently, and ordered that the second GSI sentence be served consecutively to the three prior sentences for an aggregate seven year prison term. This appeal followed.

I

{¶ 13} Appellant's first assignment of error challenges the weight of the evidence regarding one factor necessary to prove the offense of rape.[8] R.C. 2907.02(A)(1)(c) prohibits someone from having sex with another person, who is not his spouse, when the "other person's ability to . . . consent is substantially impaired because of a mental . . . condition . . . and the offender knows or has reasonable cause to believe that the other person's ability to . . . consent is substantially impaired[.]" (Emphasis added.) Whether a non-forcible sexual encounter with an adult constitutes rape is, thus, dependant on whether the victim had a "substantial impairment" that prohibited her from having the ability to consent to the sexual contact.

{¶ 14} Once again, appellant did not contest at trial, nor on appeal, that sexual relations occurred. What appellant does argue is that the jury's conclusion that R.D. could not consent to those encounters is against the manifest weight of the evidence.

{¶ 15} Generally, a reviewing court will not reverse a conviction on grounds that it is against the manifest weight of the evidence unless it is obvious that the jury lost its way and created such a manifest miscarriage of justice that reversal and new trial are warranted. State v.

---

[8] In his statement of assignment of errors and the argument portion of his brief, appellant frames his contention as challenging his conviction for "theft." We assume this is a typographical error.

Earle (1997), 120 Ohio App.3d 457, 473, 698 N.E.2d 440; State v. Garrow (1995), 103 Ohio

App.3d 368, 370–371, 659 N.E.2d 814.

{¶ 16} The phrase "substantial impairment" is not defined in R.C. 2907.02, nor has the

Ohio Supreme Court provided any definition. State v. Daniels, Summit App. No. 25808,

2011-Ohio-6414, at ¶6.   We are confident, however, that under any definition, the evidence in

the case sub judice established that R.D. had a substantial impairment and, consequently, could

not consent to sexual relations.   Jane Davis, R.D.'s mother, testified that she is her daughter's

guardian and that R.D. scored 50-60 on IQ tests.   We note that our Ninth District colleagues

found that a victim's guardianship, and a 58 IQ, are factors that a jury could consider to find

substantial impairment. Id. at ¶¶7-9.

{¶ 17} Moreover, Davis further testified that her daughter has the mind of a 6 to 9 year

old child.   Lauren Dutton, who examined R.D. at the hospital, testified that R.D. acted like an 8

year old.   Molly Haught, R.D.'s counselor at the Wellness Center in Parkersburg, related R.D.

has an emotional age of a 5-7 year old.   Dr. Michael Holtgrewe, who participated in prior

guardianship proceedings with Davis, opined that R.D. functions at a 7-8 year old mentality.

{¶ 18} Admittedly, the evidence adduced at trial does not firmly affix R.D.'s level of

cognitive functioning.   Nevertheless, we do not believe that a firm or concrete age level is

required.   Here, four witnesses   placed R.D.'s cognitive mental and emotional level at that of a

child below the age of thirteen.   This age is also the threshold at which the Ohio General

Assembly has deemed that no one can give consent to sex. See R.C. 2907.02(A)(1)(b).   In the

case sub judice, in view of the testimony of these witnesses, three of whom are professionals

unrelated to the victim, we cannot conclude that the jury lost its way in determining that R.D. has

a substantial impairment toward giving consent to sexual relations.

{¶ 19} We again recognize that the parties adduced conflicting evidence at trial. Appellant testified that R.D. behaved like a 16 to 18 year old at the time of the offense. Another defense witness, Harriet Metcalf, related that she had met R.D. and she also thought that she behaved like a 16 year old. However, it is well-settled that evidence weight and witness credibility are issues that the trier of fact must consider and determine and appellate courts afford great deference to those determinations. State v. Frazier, 115 Ohio St.3d 139, 873 N.E.2d 1263, 2007-Ohio-5048, at ¶106; State v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763. The rationale for deferring to the trier of fact on such issues is that the trier of fact is best positioned to view the witnesses, to observe demeanor, gestures and voice inflections and to use those observations to weigh witness credibility. See Myers v. Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Thus, a jury is free to believe all, part or none of the testimony of any witness who appears before it. State v. Colquitt, 188 Ohio App.3d 509, 936 N.E.2d 76, 2010-Ohio-2210, at ¶10, fn. 1; State v. Nichols (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80. Here, these principles are particularly important because the jury viewed the witnesses who testified about R.D.'s mental capability, and also actually observed R.D. testify on the witness stand. Thus, the jury could formulate its own conclusions as to R.D.'s mental age.

{¶ 20} For all these reasons, we cannot conclude that the verdicts are against the manifest weight of the evidence and we hereby overrule appellant's first assignment of error.

II

{¶ 21} Appellant's second assignment of error challenges certain trial testimony. When

the prosecution asked R.D.'s mother if she had tried to explain "sexual activity" to her daughter, Jane Davis replied "Yes . . . numerous times, because I knew that she wouldn't understand and wouldn't comprehend."   Appellant, however, objected to Davis's testimony because she had not been qualified as an "expert" on what her daughter comprehends at her level of cognitive functioning.   The trial court overruled the objection and permitted Davis to testify that her daughter did not "understand" or "comprehend" such things.   Appellant argues that this testimony violates Evid.R. 701 & 702(A).   We disagree.

**{¶ 22}** Evid.R. 701 states that lay witness opinion testimony must be limited to those "rationally based on the perception of the witness."   By contrast, expert testimony "relates to matters beyond the knowledge or experience possessed by lay persons." Evid.R. 702(A). Appellant argues that only an expert could testify about the extent to which R.D. understood sexual relations, and her mother is not such an expert.   Appellant cites In re Barnhart, Putnam App. No. 12-07-13, 2008-Ohio-1782, ¶5 in support of his argument.   Our reading of Barnhart, however, does not agree with that particular interpretation.   Barnhart noted that an expert gave testimony concerning the victim's ability to understand sexual matters, but nothing in that opinion states that only an expert can give that sort of testimony.   Instead, we agree with the Eighth District that substantial impairment need not be proven by expert medical testimony, but can be established through the testimony of people who have interacted with the victim, and by allowing the trier of fact to assess the person's ability to appraise or control his or her conduct. State v. Brady, Cuyahoga App. No. 87854, 2007-Ohio-1453, at ¶78.

**{¶ 23}** In the case sub judice, it is difficult to conceive of anyone who could posses a better understanding of a child's ability to comprehend sexual matters than a child's mother.

Indeed, Jane Davis, who interacted with R.D. on a daily basis, may well have an understanding of how her daughter may process sexual information far better than any expert.[9]

**{¶ 24}** It is again worth noting that the jury had the opportunity to observe R.D.'s testimony and to draw its own conclusion whether R.D. had sufficient maturity to understand to sex.   As the trier of fact, the jury found she could not.

**{¶ 25}** For all these reasons, we hereby overrule appellant's second assignment of error.

III

**{¶ 26}** Appellant's two remaining assignments of error involve various remarks the prosecution made during closing argument.   Appellant contends the remarks amounted to improper comments on his credibility.   In particular, appellant points to the prosecutor calling his testimony "Un-credible," "a bold faced lie," "preposterous" and "just crap."

**{¶ 27}** It is true that neither the prosecution nor the defense may vouch, or offer their personal beliefs, concerning witness credibility.   See State v. McGlothin, Hamilton App. No. C-060145, 2007-Ohio-4707, at ¶¶19-20; State v. Bevins, Hamilton App. No. C-050754, 2006- Ohio-6974, at ¶27.   We agree, on the one hand, that the comments in the case at bar are very emphatic.   On the other hand, appellant did place his credibility into question when he testified that he lied to police about inserting his finger into R.D. during their encounter. Moreover, appellant has attempted to cast someone who has been characterized with a pre-teen cognitive level as the sexual aggressor in these encounters – something that strains credulity if

---

[9]   Interestingly, appellant argues that only an expert can testify regarding R.D.'s understanding of sexual matters when he, himself, testified that R.D. behaved like a 16 to 18 year old and another defense witness corroborated this view. Although testimony as to the victim's age does not explicitly go to her understanding of sex, this defense testimony implicitly suggested that R.D. behaved as if she was sixteen or above and, thus, able to understand and to consent to sexual relations.

the prosecution's testimony is to be believed, and the trier of fact obviously did so.

{¶ 28} Furthermore, because appellant did not object to these alleged instances of prosecutorial misconduct, appellant waived all but plain error. See State v. Goff, Lawrence App. No. 07CA17, 2009-Ohio-4914, at ¶91; State v. Givens, Washington App. No. 07CA19, 2008-Ohio-1202, at ¶¶26-27.  Notice of Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Rohrbaugh, 126 Ohio St.3d 421, 934 N.E.2d 920, 2010-Ohio-3286, at ¶6; State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.  To find plain error, we must be able to say that, but for the alleged error, the outcome of trial clearly would have been otherwise.  State v. McCausland, 124 Ohio St.3d 8, 918 N.E.2d 507, 2009-Ohio-5933, at ¶15; State v. Braden, 98 Ohio St.3d 354, 785 N.E.2d 439, 2003-Ohio-1325, at ¶50.  Prosecutorial misconduct rises to plain error only if it is clear that a defendant would not have been convicted in the absence of the improper comments.  State v. Conley, Pike App. No. 08CA784,  2009-Ohio-1848, at ¶27; State v. Olvera-Guillen, Butler App. No. CA2007-05-118, 2008-Ohio-5416, at ¶36.

{¶ 29} In the case sub judice, R.D. testified that appellant inserted his penis inside her "front bottom."  Appellant admitted touching R.D. on both occasions, and masturbating over her on the second instance of alleged sexual conduct.  BCI witnesses testified that semen was found inside R.D.'s vagina and that a genetic profile could not exclude appellant as the source of that semen.  Appellant also indicated in the taped conversation with R.D.'s mother, as well as his conversation with police, that he digitally penetrated R.D.  In light of all this evidence, we cannot conclude that the outcome of the trial would have been otherwise but for the prosecutor's

comments.

{¶ 30} Appellant further claims that his trial counsel was constitutionally ineffective because he did not object to these comments.   Criminal defendants have a right to counsel, and this right includes a right to the effective assistance from counsel.   McMann v. Richardson (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763; State v. Lytle (Mar. 10, 1997), Ross App. No. 96CA2182. To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) such deficient performance prejudiced the defense and deprived him of a fair trial. See Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; also see State v. Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904.

{¶ 31} As to the first prong of this test, even if we assume, arguendo, that the prosecution's comments were objectionable, counsel may have decided not to object in order to avoid drawing greater attention to the comments.   See State v. Boykin, Montgomery App. No. 19896, 2004-Ohio-1701, at ¶146; State v. Hayden (Dec. 5, 1995), Franklin App. No. No. 95APA05-559.   This Court does not review "trial tactics" for ineffective assistance claims even when those tactics may, in retrospect, appear debatable. State v. Madden, Adams App. No. 09CA883, 2010-Ohio-176, at ¶25; State v. Lewis, Pickaway App. No. 09CA7, 2010-Ohio-130, at ¶21.   Further assuming for purposes of argument that trial counsel's performance was deficient, that fact will not merit reversal unless appellant can show that a reasonable probability exists that, but for counsel's alleged error, the result of the trial would have been different. See State v. White (1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus.   However, as we discussed above, in view of

all the evidence adduced at trial in the case sub judice, the outcome of this trial would not have been different if trial counsel had objected to these comments.

{¶ 32} For all of these reasons, we hereby overrule appellant's third and fourth assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Kline, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele
Presiding Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.