[Cite as *State v. Waters*, 2014-Ohio-3109.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 13CA693 |
| | : | |
| vs. | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| CHARLES E. WATERS, | : | <u>ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | **Released: 07/10/14** |

_____
APPEARANCES:

K. Robert Toy, Toy Law Office, Athens, Ohio, for Appellant.[1]

Trecia Kimes-Brown, Vinton County Prosecuting Attorney, and Jason D. Holdren, Assistant Vinton County Prosecuting Attorney, McArthur, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Charles E. Waters (Appellant) appeals his conviction in the Vinton County Court after a jury found him guilty of operating a motor vehicle under the influence (OVI) in violation of R.C. 4511.19(A)(1)(a). On appeal, Appellant argues: (1) he was denied effective assistance of counsel; and (2) he was denied due process by the prosecutor's misconduct. Upon review, we find that Appellant was not denied effective assistance of counsel and further, that the prosecutor's alleged misconduct did not rise to the level

_____
[1] Appellant was represented by other counsel during the trial court proceedings.

of plain error.   Accordingly, we overrule both assignments of error and affirm the judgment of the trial court.

## FACTS

**{¶2}**  Appellant was convicted by a jury of his peers for a violation of R.C. 4511.19(A)(1)(a), operating a motor vehicle under the influence of drugs, alcohol, or a combination of drugs and alcohol, on August 28, 2013. The citation arose from incidents which occurred in the early morning hours of February 15, 2013.

**{¶3}**  Officer Hixson (Hixson) observed Appellant and two others, a friend, Charles Gambill (Gambill), and Appellant's step-daughter Rebecca Fuller (Fuller) inside Bud's One Stop convenience store in McArthur, Ohio. Hixson smelled the odor of an alcoholic beverage emanating in the store. When Appellant stepped near him, Hixson determined the odor of the alcoholic beverage was on Appellant.  He observed Appellant exit the store, go to a vehicle and start the vehicle.  Hixson later testified Appellant started the car, "revved" up the engine multiple times, pulled the car forward a few feet, and then backed up in the direction of where Gambill was standing. Hixson testified that Appellant backed extremely close to Gambill, appearing as though trying to hit him.  It next appeared Gambill was trying to get in the passenger side and Appellant was preventing him from doing

so. Based on these observations, he made contact with Appellant and Gambill.

{¶4} Hixson made contact with Gambill first, outside the vehicle, and instructed him to stay on the sidewalk. He next approached Appellant in the driver's seat, leaned in, and observed a strong odor of alcoholic beverage inside the vehicle. He asked Appellant about his erratic driving and Appellant indicated he was "playing a prank" and "messing around." Hixson then asked Appellant for identification and vehicle information. He requested that Appellant exit the vehicle. At that point, Hixson again noticed a strong smell of alcoholic beverage on Appellant's person, as well as bloodshot, glassy eyes and slurred speech.

{¶5} Appellant eventually stated he had two to three drinks earlier in the evening in Athens, Ohio. He failed three field sobriety tests administered by Hixson. Based on Hixson's training and experience, he determined Appellant was under the influence of alcohol and impaired to the point he should not be operating a vehicle. Appellant was placed under arrest and transported to the Vinton County Sheriff's Office for processing.[2]

---

[2] A Deputy Kemmerling arrived at the scene after Hixson called for backup. Deputy Kemmerling assisted Hixson in searching the vehicle. They located two Coors light beer cans opened, and a package of unopened cans of Coors in the back seat of the red Ford Mustang owned by Gambill. Gambill was issued an "open container" citation.

{¶6} The Vinton County Court appointed Appellant counsel and counsel filed a request for discovery. Counsel never filed a motion to suppress on any matters related to Appellant's citation and a trial commenced on August 28, 2013. Hixson and Deputy Kemmerling testified on behalf of the State of Ohio. The State also presented a video obtained from Bud's One Stop showing the events transpiring before, during, and after Hixson arrived at the convenience store.

{¶7} Appellant called two witnesses, his companions on the night of the incident. Both testified Appellant was not impaired at the time he drove the car on Bud's parking lot. Appellant also testified that he was not impaired when he operated the vehicle.

{¶8} The jury found Appellant guilty and he was sentenced to serve 180 days in the county jail, with 150 days suspended. He was fined $850.00, plus court costs. His driver's license was suspended for two years, and he was placed upon 18 months of reporting probation. This timely appeal followed. The trial court stayed execution of his sentence pending appeal.

{¶9} Where relevant, additional facts contained in the record will be cited below.

ASSIGNMENTS OF ERROR

"I. DEFENDANT-APPELLANT WAS REPRESENTED BY COURT-APPOINTED COUNSEL WHO FAILED TO FILE ANY MOTIONS TO SUPPRESS, FAILED TO CHALLENGE THE VALIDITY OF THE FIELD SOBRIETY TESTS, AND FAILED TO CHALLENGE THE EXCUSING OF A JUROR AT THE CONCLUSION OF THE TESTIMONY OF THE CASE."

"II. APPELLANT'S DUE PROCESS RIGHTS WERE DENIED BY PROSECUTOR'S MISCONDUCT AND MISSTATEMENT OF THE LAW."

ASSIGNMENT OF ERROR ONE

{¶10}  Under the first assignment of error, Appellant argues counsel rendered ineffective assistance in that defense counsel:

(1) Failed to file a motion to suppress the initial stop based on probable cause and to challenge the validity of the method by which Officer Hixson conducted the field sobriety tests;

(2) Rendered deficient cross-examination of Officer Hixson;

(3) Elicited unfavorable testimony about the client's refusal to take a portable Breathalyzer test-twice;

(4) Failed to inquire about a favorable juror to the defense.

Appellant argues all the alleged errors by defense counsel demonstrate a reasonable probability that the outcome of the trial would have been different had defense counsel been effective.  Before we address each of Appellant's contentions in turn, we begin by setting forth the appropriate standard of review.

A.  STANDARD OF REVIEW

{¶11} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441 (1970); *State v. Stout,* 4th Dist. Gallia No. 07CA5, 2008-Ohio-1366, ¶21.  To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998).  "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006 Ohio-2815, 848 N.E.2d 810, ¶95 (citations omitted).  "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal,* 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52, (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶12} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 4th Dist. Washington No. 07CA1, 2008-Ohio-482, ¶10, citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor,* 112 Ohio St.3d 377, 2006 Ohio-6679, 860 N.E.2d 77, ¶62; *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. *State v. White,* 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), at paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be

affirmatively demonstrated. See *State v. Clark,* 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶22; *State v. Tucker,* 4th Dist. Ross No. 01CA2592, 2002-Ohio-1597; *State v. Kuntz,* 4th Dist. Ross No. 1691, 1992 WL 42274. We are also mindful that "[t]he failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial." *State v. Witherspoon,* 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, ¶33.

## B.  LEGAL ANALYSIS

{¶13}  Appellant first contends that counsel was ineffective for failing to file a motion to suppress the initial stop and/or challenge the validity of the method by which Hixson conducted the field sobriety testing.  The failure to file a motion to suppress does not constitute per se ineffective assistance of counsel.  *State v. James,* 4th Dist. Ross No. 13CA3370, 2013-Ohio-5475, ¶19; *State v. Walters,* 4th Dist. Adams No. 12CA949, 2013-Ohio-772, ¶20. Instead, the failure to file a motion to suppress amounts to ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if made.  *Id.,* see, *State v. Resendiz,* 12th Dist. Preble No. CA2009, 04-012, 2009-Ohio-6177, ¶29.  As to Appellant's contention that a motion to suppress on the issue of probable cause and the validity of Hixson's method for conducting FST's, we do not find a reasonable probability that the motion would have been successful if made.

{¶14} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 391 U.S. 1, 88 S.Ct. 1503 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574 (1975). In *Terry*, the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton,* 11 Ohio St.3d 5961, 463 N.E.2d 1237 (1984). The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87-88, 565 N.E.2d 489 (1988).[3]

---

[3] Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law

{¶15}  In the present case, the events which unfolded before Hixson demonstrated : (1) Appellant smelled like the odor of an alcoholic beverage when he stepped near Hixson inside the store; (2) Appellant left the store and operated a motor vehicle in Hixson's view; (3) Appellant operated the vehicle in an erratic manner; and (4) upon a closer encounter with Appellant, Hixson noted a strong smell of the alcoholic beverage, bloodshot, glassy eyes, and slurred speech. The video admitted as evidence corroborated Hixson's testimony.  Hixson would have articulated his same observations at a suppression hearing.  We find it highly doubtful a motion to suppress would have been successful on the issue of the propriety of the stop.

{¶16}  Appellant also argues a motion to suppress would have revealed how many OVI cases Hixson had participated in. We simply fail to see how the answer to this question, one way or another, would have justified suppression of any evidence herein.

{¶17}  Appellant also challenges the validity of the method by which Hixson conducted the field sobriety tests (FSTs).  In order to challenge FSTs, Appellant must allege with specificity and particularity in what way the tests were not valid or did not substantially conform to NHTSA

---

and fact.  *State v. Hammen,* 5th Dist. Stark No. 2012CA00009, 2012-Ohio-3628, ¶21, citing *State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998).  During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate the witness credibility.  *State v. Brooks,* 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996).

standards. *State v. Coleman,* 7th Dist. Columbiana No. 13CO3, 2014-Ohio-1498, ¶30, citing *State v. Bish,* 191 Ohio App.3d 991, 2010-Ohio-6604, 947 N.E.2d 257, ¶15-17. Here, Appellant has not made a specified or particularized argument with regard to how the tests were not valid or did not substantially conform to National Highway Traffic Safety Administration (NHTSA) standards.

{**¶18**} Hixson testified at trial that the tests are approved by NHTSA. He testified he asked Appellant to perform the horizontal gaze nystagmus test (HGN), "walk and turn" test, and the "one-legged stand" test. Before doing so, Hixson retrieved cards from his vehicle which contained the exact procedure in which to administer each field sobriety test. The cards are issued and approved by NHTSA. Hixson also demonstrated the walk and turn test and the one-legged stand test. Again, we find it highly doubtful that the trial court would have suppressed evidence relating to the validity of the method which Hixson conducted the FSTs.

{**¶19**} In *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, this court acknowledged, "it may be difficult for a defendant to establish in hindsight that a suppression motion would have been granted on the basis of evidence continued in a trial transcript." *Id.,* at 14. "Where the record is not clear or lacks sufficient evidence to determine whether a

suppression motion would have been successful, a claim for ineffective assistance of counsel cannot be established. " *State v. Parkinson,* 5th Dist. Stark No. 1995CA00208, 1996 WL 363435, *3 (May 20, 1996).  Here, we have determined that had counsel filed a motion to suppress, it is not likely the motion would have been successful.  As such, we do not find Appellant was prejudiced by the omission.  Because Appellant has not demonstrated prejudice, we do not find counsel's performance deficient in this regard.

{¶20}  Appellant next contends counsel's performance was deficient because the cross-examination of Hixson was deficient.  Appellant emphasizes Hixson's status as a "rookie cop."  Appellant contends counsel failed to highlight Hixson's inexperience, the number of OVI arrests he had participated in, his knowledge of the NHTSA manual, and failed to challenge his statement about Appellant's diabetic condition[4] and the Ohio limit for blood alcohol content.[5] Appellee points out Hixson testified on direct he graduated from the police academy in 2011 with 583 hours of training at the Ohio Peace Officer's Training Association.  He has been employed with the McArthur Police Department since June 2012.  On cross-examination, Hixson testified he had 32 hours in field sobriety training.  He

---

[4] Hixson testified in redirect that based on his training and experience, he was not aware of any person who failed a portable breath test because of a diabetic condition.

[5] Hixson testified "In the State of Ohio the limit for blood alcohol content is .08 another words [sic] eight percent of your blood that is the limit."

also testified he was furthering his education by pursuing a degree in criminal justice, although not required to be a peace officer in Ohio.

{¶21} "The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. James,* 4th Dist. Ross No. 13CA3770, 2013-Ohio-5475, ¶30, quoting *State v. Madden,* 4th Dist. Adams No. 09CA883, 2010-Ohio-176, ¶25, quoting *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶146. See also, *State v. Campbell,* 90 Ohio St.3d 320, 339, 2000-Ohio-183, 738 N.E.2d 1178; *State v. Otte,* 74 Ohio St. 3d 555, 565, 1996-Ohio-108, 660 N.E.2d 711.

{¶22} The Supreme Court of Ohio has recognized that if counsel decides, for strategic reasons, not to pursue every possible trial strategy, the defendant is not denied effective assistance of counsel. *State v. Black,* 4th Dist Ross No.12CA3327, 2013-Ohio-2105, ¶40; *State v. Brown,* 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). "Speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." *Leonard, supra,* at ¶68, quoting *State v. Cromartie,* 9th Dist. Medina No. 06CA0107-M-2008-Ohio-273, ¶25. An appellate court reviewing an ineffective assistance of counsel claim "must refrain from second-guessing the strategic decisions of trial counsel." *Black, supra,*

quoting *State v. Carter,* 72 Ohio St.3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965.

{¶23} We must also decline to second-guess counsel's strategic decisions here. It may be that counsel did not wish to highlight that, as a "rookie," Hixson's training was likely more up-to-date and he was more likely to be conscientious than an older or experienced officer. Hixson also testified he used his cards to perform the FST's, and not his memory. Perhaps counsel did not wish to emphasize this fact. On the subject of the NHTSA manual and FST's, counsel actually elicited these responses:

> Attorney Shriver: But it is not your testimonies [sic] these test are full [sic] proof?
>
> Deputy Hixson: They are not one hundred per cent full [sic] proof no.
>
> Attorney Shriver: So it is possible to fail those tests and not be under the influence?
>
> Deputy Hixson: I have never had a subject fail them and not be under the influence.
>
> Attorney Shriver: It is possible?
>
> Deputy Hixson: It is possible.

We do not find Appellant was prejudiced by his counsel's strategic decisions in conducting cross-examination of Officer Hixson.

{¶24} Appellant next contends counsel's performance was deficient in that counsel twice elicited testimony demonstrating that Appellant twice refused a portable breathalyzer test (PBT). Appellee points out Appellant has not cited to the transcript as required by App.R. 16(A)(3). In the interests of justice, we reviewed the transcript to discover Appellant's counsel did raise the issue of the PBT in cross-examination of Hixson. Hixson testified Appellant told him his reason he refused the PBT was that "he was a diabetic, he would not pass the test. It is possible that counsel wished to get this testimony about Appellant's condition, and the fact he reported his diabetic condition to Hixson, before the jury and through the testimony of someone other than Appellant. He chose to do so by questioning Hixson about the PBT.

{¶25} It is true the results of portable breath tests are not to be admitted for use as evidence at trial. *State v. Shuler*, 168 Ohio App.3d 183, 858 N.E.2d 1254 (4th Dist.2006), ¶9 (Our openness to employing PBT results as a factor to be used in determining probable cause, however, has never extended into admitting PBT results as evidence at trial.). It is also possible counsel wished to present Appellant to the jury as a person who "stood on principle" by refusing both the PBT and later the other tests

offered.[6]  Again, we do not second-guess trial strategy, and we cannot say the testimony elicited about the PBT prejudiced Appellant's case.

{¶26}  Finally, Appellant contends counsel's performance was deficient in that counsel failed to question a juror who was excused and who may have been a juror favorable to Appellant because they were related by marriage. This discussion occurred in the record:

> The Court:  Excuse me we are not going to do closing yet.  One administer [sic] matter to deal with I ask the Clerk to keep the record running …Please be seated Ms. Thompson are you lonely over there yourself.  You had indicated to the Clerk prior to the testimony of Rebecca Fuller that you are related to Ms. Fuller is that correct?
>
> Ms. Thompson:  Yes.
>
> Judge Salyer:  What is your relationship to Ms. Fuller.
>
> Ms. Thompson:  It is my husband cousin.
>
> Judge Saleyer:  It is your husband cousin?
>
> Ms. Thompson:  Yes.
>
> Judge Salyer:  Inaudible.
>
> Judge Salyer:  Okay, and now you have put two and two together?
>
> Ms. Thompson:  Yes.

---

[6] Appellant testified in direct examination he does not trust Breathalyzer tests in Vinton County.  He testified to a bad prior experience in 2009, when he attempted to perform a Breathalyzer test and somehow ended up getting thrown on the ground and his chin "busted."

Judge Salyer:  having to put two and two together and knowing those relationship and those things do you feel like you couldn't make a fair decision.

Ms. Thompson:  Inaudible.

Judge Salyer:  You don't believe you can make a fair decision.

Ms. Thompson:  Not knowing (inaudible)

Judge Salyer:  Okay.

Ms. Thompson:  Inaudible.

Judge Salyer:  I respect that that is fine. State have any questions that it would like to ask the juror base [sic] upon the Court line of questioning?

Assistant Prosecutor Holdren:  Judge I would like to thank Ms. Thompson for her disclosure letting us know the issue.  I certainly understand the conflict that she finds herself in I have no objection to excuse her.

Judge Salyer:  Okay, thank you.

Attorney Shriver:  No objection of excusing her, your honor.

**{¶27}**  The juror indicated she "could not make a fair decision."

Nothing in that statement, or in the exchange contained in the transcript, indicates that she would have been a "favorable" juror to the defense.  We do not know why counsel did not inquire further.  The record is silent on this point.  However, to simply assume she would have been favorable, or not, is pure speculation. We find no error in counsel's strategic decision not to question the juror further or to try to keep the juror on the panel.

{¶28} For the reasons discussed above, we do not find Appellant was prejudiced by counsel's strategic choices.  We do not find Appellant was rendered ineffective assistance of counsel.  As such, we overrule this assignment of error.

ASSIGNMENT OF ERROR TWO

{¶29} Appellant contends his due process rights were denied throughout the trial rift with misstatements of the law, prejudicial arguments that had nothing to do with driving a vehicle while impaired, and statements made to incite the passion and prejudice of the jury.  In particular, Appellant points to these instances in the transcript:

1) The prosecutor's opening statement at page 47:

"…it's all fun and games until someone loses an eye.  I think we've all heard that, and I know I have heard that, mother, father, grandparents, teacher.  I think it's true in this case and thinking about this case and I think that is a fair statement. Maybe modified slightly but it's all fun in drinking games until someone gets hit by a drunk driver but is probably the more appropriate phase.  This case is about a lot of things, and there are a lot of things this case is not about.  We all unfortunately have heard the stories national stories of kids going to the prom and getting ready to graduate, make their way in life and they are hit by a drunk driver.  Quickly taken away, way too early, this is not this case.  We heard drunk driver that has passenger in their car they get into accidents, and the passenger is hurt or killed in some way, we have heard those stories.  That is not this case.  We heard stories of drunk drivers where they get into an accident and maybe they go the media or ditch, tree or something like that and they are properly damages [sic]. That is not this case."

(2) Testimony at page 138 of the transcript that Appellant apparently kissed his step-daughter on the lips.

(3) Appellee's misstatement of law indicating individuals are required to take field sobriety testing.

(4) The following exchange at transcript pages 211-212 which appears to belittle Appellant's back injury:

Assistant Prosecutor Holdren: Somebody complains of eye injury their eye hurting does that get them out of the horizontal gaze nystagmus test?

Officer Hixson:    It doesn't.

Assistant Prosecutor Holdren: Somebody indicates that they have a toe or foot injury does that get them out of walking the line?

Officer Hixson:    It does not.

{¶30} We begin by pointing out Appellant failed to object to the alleged improper opening statement, misstatements of the law, and rebuttal testimony at trial. Therefore, we review the alleged errors under the standard set forth regarding plain errors. Failure to object to an alleged error waives all but plain error. *State v. Keeley,* 4th Dist. Washington No. 11CA5, 2012-Ohio-3564, ¶28. Notice of Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Rohrbaugh,* 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, at ¶6; *State v. Long,* 53 Ohio

St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the syllabus. To find

plain error, the outcome of trial clearly would have been otherwise. *State v.*

*McCausland,* 124 Ohio St.3d 8, 918 N.E.2d 507, 2009-Ohio-5933, at ¶15;

*State v. Braden,* 98 Ohio St.3d 354, 785 N.E.2d 439, 2003-Ohio-1325, at

¶50.

## A. STANDARD OF REVIEW

{¶31} "The test for prosecutorial misconduct is whether the conduct

was improper and, if so, whether the rights of the accused were materially

prejudiced." *State v. Purdin,* 4th Dist. Adams No. 12CA944, 2013-Ohio-22,

¶ 31, quoting St*ate v. Leonard,* 4th Dist. Athens No. 08CA24, 2009-Ohio-

6191, ¶ 36, *citing State v. Smith,* 97 Ohio St.3d 367, 2002-Ohio-6659, 780

N.E.2d 221, ¶45, in turn citing *State v. Smith,* 14 Ohio St. 3d 13, 14, 470

N.E. 2d 883 (1984). "The 'conduct of a prosecuting attorney during trial

cannot be grounds for error unless the conduct deprives the defendant of a

fair trial.'" *Purdin, supra,* quoting *State v. Givens,* 4th Dist. Washington No.

07CA19, 2008-Ohio-1202, ¶28, quoting *State v. Gest,* 108 Ohio App.3d 248,

257, 670 N.E.2d 536 (8th Dist.1995). *Accord State v. Apanovitch,* 33 Ohio

St. 3d 19, 24, 514 N.E. 2d 394 (1987). "Prosecutorial misconduct

constitutes reversible error only in rare instances. *"Purdin, supra,* quoting

*State v. Edgington,* 4th Dist. Ross No. 05CA2866, 2006-Ohio-3712, ¶18,

citing *State v. Keenan,* 66 Ohio St. 3d 402, 406, 613 N.E. 2d 203 (1993).

The "touchstone analysis* * * is the fairness of the trial, not the culpability

of the prosecutor. * * * The Constitution does not guarantee an 'error free,

perfect trial.'" *Purdin, supra,* quoting *Leonard* at ¶36, quoting *Gest* at 257.

## B.  LEGAL ANALYSIS

{¶32}  We begin with Appellant's claim that the prosecutor's opening

statement appealed to the passion and prejudice of the jury by talking about

drunk drivers killing and maiming people. Here, we reference the opening

remarks set forth above at page 19. Appellant argues the only reason the

prosecutor made these remarks is to cause the jury to ignore the facts and

circumstances in the instant case and ask the jury to convict based on public

demands for conviction rather than the facts of this particular case.

{¶33}  Both the prosecution and the defense have wide latitude during

opening and closing arguments.  *Sunbury v. Sullivan,* 5th Dist. Delaware No.

11CAC030025, 2012-Ohio-3699, at *¶*30. See also, *State v. Pump*, 4th Dist.

Ross No. 93CA1968, 1994 WL 274440, *5.  In reviewing allegations of

prosecutorial misconduct, it is our duty to consider the complained of

conduct in the context of the entire trial. *Sullivan, supra,* at ¶30, citing

*Darden v. Wainright,* 477 U.S. 168, 106 S.Ct. 2464 (1986).  "Prosecutorial

misconduct rises to plain error only if it is clear that a defendant would not

have been convicted in the absence of the improper comments." *Purdin, supra* at ¶39, quoting *State v. Keeley,* 4th Dist. Washington No. 11CA5-2012-Ohio-3564, ¶28, citing *State v. Conley*, 4th Dist. Pike No. 08CA784, 2009-Ohio-1848, ¶27; *State v. Olvera-Guillen,* 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶36.

**{¶34}** Here, the outcome of Appellant's trial hinged on which version of the traffic stop and the basis for it the jury believed. The weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier,* 73 Ohio St.3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000, citing *State v. Grant,* Ohio St.3d 465, 477, 1993-Ohio-171, 620 N.E.2d 50. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶35}** "[D]irect evidence of a fact is not required. Circumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence." *State v. Lott,* 51 Ohio St.3d 160, 555 N.E. 2d 293 (1990), citing *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330, 81 S.Ct. 6, 10 (1960), citing *Rogers v. Missouri Pacific RR Co.,* 352 U.S. 500-508, fn. 17,

77 S. Ct. 443, 449, fn. 17 (1957). Even murder convictions and death sentences can rest solely on circumstantial evidence. *State v. Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d 394 (1987); *State v. Nicely,* 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988).

{¶36} Here, we point out there was direct and circumstantial evidence of guilt and the jurors were in the best position to evaluate the State's witnesses and Appellant's witnesses, the video they viewed, and in the best position to determine the credibility of the witnesses and the evidence. The jury had the testimony of Hixson and Kemmerling. They also had the video of the events before, during, and after Appellant's arrest for operating a vehicle under the influence.

{¶37} Although the prosecutor does go on at length about other more shocking and egregious face scenarios, he states twice "This is not the case." And, he never asks the jury to convict Appellant in order to punish all OVI offenders or send a message. Under these circumstances, we cannot say it is clear Appellant would not have been convicted in the absence of the prosecutor's remarks. We find no error, let alone plain error.

{¶38} In his next argument, Appellant also contends the testimony that Appellant apparently kissed his step-daughter on the lips also aroused

the passion and prejudice of the jury.  However, Appellant does not explain

exactly how this is supposed to have occurred.

{¶39}  " 'A competent trial attorney might well eschew objecting * *

* in order to minimize jury attention to the damaging material.'" *Topping,*

*supra,* quoting *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873

N.E.2d 828, ¶90, quoting *United States v. Payne,* 741 F.2d 887, 891 (C.A. 7.

1984).  *Accord. State v. Franklin,* 97 Ohio St.3d 1, 2002-Ohio-5304, 776

N.E.2d 26, ¶42 (stating that "[a] reasonable attorney may decide not to

interrupt his adversary's argument as a matter of strategy");  *State v. Clay,*

7th Dist. Mahoning No. 08MA2, 2009-Ohio-1204, ¶141 (stating that

'[l]imiting objection during closing is a trial tactic to avoid trying to draw

attention to the statements.").

{¶40}  Regarding this testimony, the transcript reveals this

questioning took place as the video was played:

> Assistant Prosecutor Holdren:  The female that enter [sic] it
> appears that Mr. Waters has his arm around her or touch[sic]
> her, then it appears that she was smoking a cigarette and he
> took over smoking  the cigarette.
>
> Deputy Hixson:  Yes.
>
> Assistant Prosecutor Holdren:  Do you know if there is a
> connection between this lady and Mr. Waters?

Deputy Hixson:  After questioning him later they knew each other he stated to me that they were related in some way sounded semi distance [sic].  I don't recall the exact relation.

Assistant Prosecutor Holdren:  Officer it appears that Mr. Waters was playing with this lady hair [sic] looking at something on her neck that what you observe?

Deputy Hixson:  Yes.

Assistant Prosecutor Holdren:  How would you characterize their demeanor together at this point?

Deputy Hixson:  After I review [sic] the video I did observe it odd that he claimed they were possible [sic] related as a family member. Although he was very close with the female.

And later as the video was played:

Assistant Prosecutor Holdren:  Did you observe anything I guess unusual in that portion?

Deputy Hixson:  I did.

Assistant Prosecutor Holdren:   Okay, what is that?

Deputy Hixson:  It appears that Mr. Waters given [sic] the female a kiss on the mouth or close to the mouth.

{¶41}  We agree with Appellee that the prosecutor had the right to point out Appellant's witness's close connection to the Appellant in order to suggest her testimony may not have been completely impartial.  The prosecutor simply pointed out the weaknesses in their testimony and the fact they were relatives. We do not find Appellant was convicted solely on this testimony or that plain error occurred.

{¶42} Appellant also contends Appellee misstated the law in the presentation of evidence when on rebuttal of Hixson, counsel stated that individuals were required to take field sobriety testing. This statement was not objected to. Appellant does not direct us to the portion of transcript where this misstatement occurred. Our review, nevertheless, in the interests of justice does not ferret out the comment. We therefore decline to address this contention.

{¶43} Finally, Appellant complains the prosecutor ridiculed Appellant for his back injury, also set forth above at page 20. This testimony was not objected to by counsel. Although the prosecutor's questioning was suggestive and skeptical, we see nothing inherently unfair or improper in the strategy. Appellant has made no showing he would not have been convicted but for the comments.

{¶44} Had counsel lodged objections and/or requested curative instructions at each juncture where, in hindsight, Appellant now feels would have been appropriate, the objection would simply have called attention and perhaps unduly emphasized the content of each instance in the jury's mind. Based on the evidence supporting Appellant's conviction, along with the fact that the jurors were in the best position to view the witnesses and assess credibility, we are not convinced that the outcome of the proceeding would

have been different had counsel made the now-desired objections . For the

reasons discussed above, we find the prosecutor's alleged instances of

misconduct did not rise to the level of plain error. We affirm the judgment of

the trial court and overrule Appellant's second assignment of error.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the County Court of Vinton County to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Hoover, J.: Concur in Judgment and Opinion.

For the Court,


BY: _____
Matthew W. McFarland, Judge
**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**